1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   JOSE ALFREDO SUAREZ, | No.  1:22-cv-00160-JLT-SAB (PC) |
| 12               Plaintiff, | FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' |
| 13        v. | EXHAUSTION MOTION FOR SUMMARY JUDGMENT |
| 14   KEN CLARK, et al., | |
| 15               Defendants. | (ECF No. 53) |

16

17        Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant

18   to 42 U.S.C. § 1983.

19        Currently before the Court is Defendants' exhaustion motion for summary judgment, filed

20   June 15, 2023.

21                                  **I.**

22                        **RELEVANT BACKGROUND**

23        This action is proceeding against on Plaintiff's excessive force claim against Defendant O.

24   Valladolid, failure to intervene claim against Defendants B. Camargo, Gamboa, and T. Hieng, and

25   retaliation claim against Defendant Gamboa.

26        Defendants filed an answer to the complaint on December 12, 2022.  (ECF No. 38.)

27        After an unsuccessful settlement conference, the Court issued the discovery and

28   scheduling order on February 15, 2023.  (ECF No. 48.)

1     As previously stated, on June 15, 2023, Defendants filed the instant exhaustion motion for

2   summary judgment.  (ECF No. 53.)  Plaintiff filed an opposition on July 17, 2023, and

3   Defendants filed a reply on July 31, 2023.  (ECF Nos. 58, 61.)  Accordingly, Defendants' motion

4   is deemed submitted for review without oral argument.  Local Rule 230(l).

5                                            **II.**

6                                   **LEGAL STANDARD**

7     **A.     Statutory Exhaustion Requirement**

8     The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

9   administrative remedies as are available" before commencing a suit challenging prison conditions."

10   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must

11   exhaust available remedies, but need not exhaust unavailable ones.").  Exhaustion is mandatory

12   unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy

13   remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and

14   the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir.

15   2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

16   This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v.

17   Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the

18   prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted

19   claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534

20   U.S. at 524).

21   The failure to exhaust is an affirmative defense, and the defendants bear the burden of

22   raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d

23   1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the

24   complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.

25   Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are

26   entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light

27   most favorable to the plaintiff, shows he failed to exhaust.  Id.

28   ///

1          **B.      Summary Judgment Standard**

2          Any party may move for summary judgment, and the Court shall grant summary judgment

3  if the movant shows that there is no genuine dispute as to any material fact and the movant is

4  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,

5  747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

6  position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

7  particular parts of materials in the record, including but not limited to depositions, documents,

8  declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

9  absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

10  support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other

11  materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ.

12  P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001);

13  accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

14          The defendants bear the burden of proof in moving for summary judgment for failure to

15  exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative

16  remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If the defendants

17  carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence

18  showing that there is something in his particular case that made the existing and generally available

19  administrative remedies effectively unavailable to him."  Id.  "If the undisputed evidence viewed

20  in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to

21  summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed,

22  summary judgment should be denied, and the district judge rather than a jury should determine the

23  facts."  Id.

24          In arriving at this Findings and Recommendation, the court carefully reviewed and

25  considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

26  facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

27  reference to an argument, document, paper, or objection is not to be construed to the effect that this

28  court did not consider the argument, document, paper, or objection. This court thoroughly reviewed

1    and considered the evidence it deemed admissible, material, and appropriate.

2                                            **III.**

3                                      **DISCUSSION**

4    **A.        Description of CDCR's Administrative Remedy Process**

5           The California Department of Corrections and Rehabilitation ("CDCR") has an

6    administrative grievance system for prisoners to appeal any policy, decision, action, condition, or

7    omission by the department or staff having an adverse effect on prisoner health, safety, or

8    welfare. Cal. Code Regs. tit. 15, § 3084.1(a) (2018).2 Compliance with 42 U.S.C. § 1997e(a)

9    requires California state prisoners to use CDCR's grievance process to exhaust their claims prior

10   to filing a complaint in court. See Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010); see also

11   Woodford v. Ngo, 548 U.S. 81, 85-86 (2006).

12          Between January 28, 2011, and June 1, 2020, there were three formal levels of appeal

13   review. Cal. Code Regs. tit. 15, § 3084.5. Under this system, in order to be timely, an inmate must

14   submit a CDCR form 602, inmate appeal, within thirty (30) calendar days of the action or

15   decision being appealed.

16          A California prisoner is required to submit an appeal at the appropriate level and proceed

17   to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.

18   2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an

19   inmate is required to "describe all information known and available to [him] regarding the claim

20   including key dates and times, names and titles of all involved staff members (or a description of

21   those staff members), and names and titles of all witnesses, to the best of the claimant's

22   knowledge" and "include all supporting documents available to the claimant related to the claim

23   or identity to the best of the claimant's ability all relevant records with sufficient specificity for

24   those records to be located." Cal. Code Regs. tit. 15, § 3482(c)(2), (c)(4).  Another regulation

25   provides that "[a]dministrative remedies shall not be considered exhausted relative to any new

26   issue, information, or person later named by the appellant that was not included" in the originally

27   submitted CDCR-602 inmate appeal form. Cal. Code Regs. tit. 15, § 3084.1(b) (repealed eff. June

28   1, 2020).

                                            4

1       **B.**     **Summary of Plaintiff's Allegations**

2       On April 20, 2020, correctional officer O. Valladolid (also identified as John Doe No. 1)

3 used excessive force against Plaintiff in an unprovoked attack.  During controlled shower escorts

4 at Corcoran State Prison, John Doe No. 1 handcuffed Plaintiff's hands behind his back and

5 proceeded to escort Plaintiff from the top tier shower back to his cell that was located on the

6 bottom tier of the housing unit.  As they took a couple steps forward away from the shower, John

7 Doe No. 1 pushed and slammed Plaintiff face/chest first " 'real fast and hard' against the concrete

8 wall pluming chase 'metal door.'"  Defendant then pressed his 200 plus pounds of body weight,

9 smashing Plaintiff against the metal door making it very difficult for him to breath.  Defendant

10 then began to verbally abuse Plaintiff by yelling that if his partner gives a five minute warning

11 that's what it is.  Defendant then grabbed Plaintiff "real tight and hard" and lifted him up causing

12 pain.  Defendant then "violently" manhandled Plaintiff by walking him to the stairs on the top tier

13 "without stopping."  As they take the first steps going down the stairs, Plaintiff had to

14 immediately stop and pull himself backwards away from Defendant's grip because he was almost

15 thrown down the stairs.  Defendant immediately grabbed Plaintiff and violently manhandled him

16 down the stairs.  At the end of the stairs, Defendant yanked Plaintiff's arms from behind causing

17 more pain and injury.  Defendant attempted to have Plaintiff's wrists injured by closing the cell

18 door on them.

19       Immediately after the incident, Plaintiff asked officer B. Camargo (also identified in

20 complaint as John Doe No. 3) for medical attention and to call the sergeant to the housing unit so

21 he could report the incident.  Officer Camargo ignored Plaintiff's requested and walked away.

22 Within minutes, officer Camargo passed by Plaintiff's cell door escorting the registered nurse

23 who was passing out medication to the inmates.  Plaintiff immediately stopped officer Camargo

24 and asked him again for medical attention to no avail.  Plaintiff also asked officer R. Gamboa

25 (also identified in the complaint as John Doe No. 2) for medical attention, but he ignored

26 Plaintiff's request.  However, minutes after Plaintiff made the request, Gamboa returned to

27 Plaintiff's cell door and threatened Plaintiff's life with physical harm in an attempt to stop him

28 from seeking medical attention and reporting the assault.

1    Defendants B. Camargo, Gamboa, and T. Hieng (identified as John Doe No. 4) witnessed

2    the attack by John Doe No. 1 and failed to intervene.

3        Approximately two hours after the assault, Defendant John Doe No. 1 stopped by

4    Plaintiff's cell and ignored Plaintiff's request for medical attention.  In retaliation, Defendant filed

5    a false Rules Violation Report against Plaintiff.

6        **C.        Statement of Undisputed Facts[1]**

7        1.        At all times relevant to the allegations in the complaint, Plaintiff was a state inmate

8    incarcerated in the California Department of Corrections and Rehabilitation (CDCR) at California

9    State Prison-Corcoran (COR).  (Compl., ECF No. 1 at 1, 3, 14, 18.)

10        2.        At all times relevant in the complaint, Defendants Hieng (Doe 4), Camargo (Doe

11    3), and Gamboa (Doe 2) were employed at COR as correctional officers.  (Compl., ECF No. 1 at

12    3-4.)

13        3.        As of August 1, 2008, CDCR's Inmate Correspondence and Appeals Branch

14    (ICAB) receives, reviews and maintains all appeals related to healthcare issues, whereas the

15    Office of the Appeals (OOA) receives, reviews, and maintains all appeals related to non-

16    healthcare appeals.  (Declaration of E. Moseley (Moseley Decl.) ¶ 2.)

17        4.        The OOA review of an appeal concludes the administrative remedy process for an

18    offender.  (Moseley Decl. ¶ 2.)

19        5.         At all times relevant to this action, an inmate was required to follow the

20    procedures set forth in Title 15 of the California Code of Regulations, sections 3084-3085

21    (repealed effective June 1, 2020). There were three formal levels of appeal review. Cal. Code

22    Regs. tit. 15, § 3084.5.  (Moseley Decl. at ¶ 5.)

23        6.        In order to be timely, an inmate must submit a CDCR form 602, inmate appeal,

24    within thirty (30) calendar days of the action or decision being appealed.  (Moseley Decl. at ¶ 5.)

25        7.        The OOA keeps an electronic record of each offender's appeal. When an appeal is

26    received by the OOA, it is assigned a log number and entered into a computer system. The

27    computer system for tracking appeals commenced in 1993. The following information is kept in

28    _____

[1] Hereinafter referred to as "UF."

6

1    the computer system and available in the Appeal History Report: the offender's CDCR number,

2    the offender's name, the appeal log number, the appeal issue, the date the appeal was received,

3    the institutional log number (which includes the acronym of the institution where the underlying

4    grievance arose), the date the appeal is closed, and the final disposition of the appeal.  (Moseley

5    Decl. at ¶ 3.)

6          8.      Plaintiff alleges that on April 20, 2020, Defendant Valladolid used excessive force

7    while escorting him from the upper tier showers back to his cell.  (Compl., ECF No. 1 at 5-7.)

8          9.      Plaintiff alleges that on April 20, 2020, Defendants Hieng and Camargo failed to

9    intervene and protect him from Defendant Valladolid.  (Compl., ECF No. 1 at 14-15.)

10         10.     Plaintiff alleges that on April 20, 2020, Defendant Gamboa threatened to retaliate

11   against Plaintiff with physical harm if Plaintiff reported the alleged assault by Defendant

12   Valladolid.  (Compl., ECF No. 1 at 7.)

13         11.     A search of the OOA computer system was conducted, under the name of Jose

14   Alfredo Suarez, CDCR No. H52800, for all non-health care related appeals received by the OOA.

15   (Moseley Decl. at ¶ 6, Ex. 1.)

16         **D.      Analysis of Defendants' Motion**

17         Defendants argue that Plaintiff failed to exhaust his claim for failure to intervene against

18   Hieng and Camargo, and failed to exhaust his claim for retaliation against Gamboa.  Specifically,

19   two relevant appeals, Grievance Log Nos. COR-20-02963 and COR-20-02303, failed to state at

20   the initial level that Camargo and Hieng failed to intervene and protect Plaintiff from Defendant

21   Valladolid's alleged use of excessive force or that Gamboa threatened to retaliate against Plaintiff

22   with physical harm if Plaintiff reported the use of excessive force.

23         In opposition, Plaintiff argues he exhausted all claims in question and any failure to

24   comply with the administrative procedural requirements were justified under "special

25   circumstances" when prison officials rendered the administrative relief "effectively unavailable."

26   ///

27   ///

28   ///

1    Here, a search was conducted for all non-healthcare related appeals received by the OOA

2 on or after April 20, 2020, while Plaintiff was housed at COR alleging Camargo, Gamboa, and

3 Hieng failed to intervene and protect him from Valladolid's use of excessive force or an

4 allegation that Gamboa threatened to retaliate against him with physical harm if Plaintiff reported

5 the use of excessive force incident. (Moseley Decl. ¶ 7.)  Two relevant appeals were identified.

6 (Id.)

7    In Grievance Log No. COR-20-02963, Plaintiff alleged on April 20, 2020, while housed at

8 CSP-Corcoran, Defendant Valladolid falsified statements within RVR Log#6990895, in an

9 attempt to cover up an assault; the assault allegation is being reviewed in appeal log#

10 CSPC-5-20-02303.  (Moseley Decl. ¶ 8, Ex. 2.)  Plaintiff appealed to the OOA on August 3,

11 2022, which was assigned Appeal Log No. 2011456, and denied by the OOA on December 14,

12 2021.  (Id.)

13    In Grievance Log No. COR-20-02303, Plaintiff alleged that on April 20, 2020, Defendant

14 Valladolid slammed Plaintiff against the plumbing chase metal door. Valladolid yelled profanities

15 at him while abusing him and adds that Defendant Gamboa observed the incident but did not get

16 involved. The appellant claims that he was denied medical attention by Defendants Camargo and

17 Gamboa.  (Moseley Decl. ¶ , Ex. 3.)  Plaintiff appealed to the OOA on September 25, 2020,

18 which was assigned Appeal Log No. 2010109, and denied by the OOA on October 4, 2021.  (Id.)

19        a.        Failure to Intervene Claims Against Camargo and Hieng

20    The initial Grievance Log Nos. COR-20-02963 and COR-20-02303, do not contain an

21 allegation that Camargo and Hieng failed to intervene and protect Plaintiff from Valladolid's use

22 of excessive force or an allegation that Gamboa threatened to retaliate against Plaintiff with

23 physical harm if he reported the use of excessive force incident.  (Moseley Decl., Exs. 2, 3.)

24    Plaintiff's original Grievance Log No. COR-20-02303, alleged that Defendant Valladolid

25 violently assaulted him and yelled profanities at him while he was being escorted back to his cell

26 from the top tier shower.  There is no reference at all to Defendant Hieng.  (Moseley Decl. Ex. 3.)

27 Although Defendant Camargo is referenced, it is only for an allegation that he denied Plaintiff

28 medical care.  (Id.)  There is simply no allegation that either Camargo or Hieng failed to intervene

8

to protect Plaintiff from Valladolid's alleged assault.

b.      Retaliation Claim Against Gamboa

Defendant argues that there no allegation that Gamboa threatened to retaliate against Plaintiff with physical harm if he reported the use of excessive force incident.  The Court does not agree.  Defendant acknowledges that Plaintiff alleged on the original grievance form in COR-20-02303, Plaintiff alleged that Gamboa told him that "things will go bad for [him]" if he reported the assault.  (ECF No. 53-2 at 7.)  Defendant argues, however, that Gamboa's alleged statement occurred before Plaintiff reported the alleged assault, and there are no facts as to what that statement meant.  (Id.)  "There are no allegations that Gamboa threatened Plaintiff with physical harm or, indeed, that Gamboa threatened Plaintiff with any retaliatory act."  (Id.)

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has exhausted his retaliation claim against Defendant Gamboa.  In the relief portion, Plaintiff requested, in relevant part:

> That c/o Valladolid and c/o Gamboa be relieved from their duties in the (4A02R) unit due to the assault and threat to my life done by c/o Valladolid and Gamboa.  (They are both a continue threat to my well being here.)  I want to press charges against c/o Valladolid for assaulting me without justification.  That there be no rep[er]cussions and threats to my well being by 'any' prison officials for the filing of this complaint.

(ECF No. 53-4 at 28, 30.)  When Plaintiff appealed the second level decision, he alleged that the second level review "failed to address that c/o Gamboa had threaten my life so that I don't report the assault to the (SGT)."  (ECF No. 53-4 at 31.)

It is clear from Plaintiff's allegations that if he filed an grievance or complaint regarding the assault by Valladolid, he would be subject to adverse action-"retaliation" by Defendant Gamboa.  Plaintiff's appeal put prison officials on notice that Defendant Gamboa made a "threat" to Plaintiff if he reported the assault.  Thus, Plaintiff's grievance would put a reasonable investigating prison official on notice that Plaintiff believed he would be subjected to adverse action if he filed a grievance or complaint about the alleged excessive force.  Neither the California regulations nor the PLRA require a grievance to include legal terminology or legal theories unless necessary to provide notice of the harm being grieved, however nor must a

9

1   grievance include every fact necessary to prove each element of an eventual legal claim.  15 Cal.

2   Code Regs. § 3482(c)(2); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). The purpose of

3   a grievance is to alert the prison to a problem and facilitate its resolution. Id.

4       While Plaintiff did not allege or write "retaliation" in the grievance, he was not required

5   to provide that level of specificity. Instead, "a grievance suffices if it alerts the prison to the

6   nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.

7   2009) (internal citation omitted). In Griffin, the prisoner plaintiff had fallen while trying to access

8   an upper bunk and filed an inmate appeal stating that he had injured himself when he fell. Id. at

9   1118.  In that inmate appeal, Griffin requested a ladder or a permanent step to access the top

10  bunk. Id. While his appeal was pending, a prison nurse issued Griffin an order for a lower bunk

11  assignment. Id. at 1118-19. In response to Griffin's inmate appeal, a prison official stated that the

12  nurse's order for a lower bunk assignment resolved the problem about which Griffin was

13  complaining. Id. at 1119. Griffin maintained, however, that prison staff disregarded the nurse's

14  order. Id.  Griffin appealed the prison official's decision to the Jail Commander and then to the

15  external referee, but he never mentioned in his subsequent inmate appeals that prison staff was

16  disregarding the nurse's order that he receive a lower bunk assignment. Id. Both the Jail

17  Commander and the external referee responded that the nurse's order addressed Griffin's problem

18  and that no further action was necessary. Id.

19      The Ninth Circuit held that Griffin had failed to properly exhaust his deliberate

20  indifference claim against the prison staff defendants. Griffin, 557 F.3d at 1118, 1121.

21  Specifically, the Ninth Circuit determined that Griffin did not provide prison officials with notice

22  that the prison staff had disregarded the nurse's order for him to receive a lower bunk assignment,

23  and that the officials responding to his appeal had reasonably concluded that the nurse's order

24  solved the problem about which Griffin had complained in his inmate appeal. Id. The court noted

25  that rather than clarifying the problem for the Jail Commander or the external referee, in his

26  inmate appeal Griffin simply continued to merely demand a ladder. Id. The Ninth Circuit

27  concluded that Griffin's inmate appeal did not "provide enough information ... to allow prison

28  officials to take appropriate responsive measures." Id.

1    Plaintiff's grievance here is distinguishable from that in <u>Griffin</u> because it specifically

2    identifies Defendant Gamboa by name, one of the wrongs for which he seeks redress (threats if

3    complain about the use of excessive force incident), and an institutional response that would

4    remedy the wrong (that there be no repercussions if file a grievance about the assault).  Plaintiff's

5    failure then to allege a legal theory or even all the facts underlying his legal claim is not fatal to

6    his exhaustion attempt because "[t]he primary purpose of a grievance is to alert the prison to a

7    problem and facilitate its resolution, not to lay groundwork for litigation." <u>Griffin</u>, 557 U.S. at

8    1120.  Thus, simply omitting that Defendant specifically threatened physical injury if he reported

9    the assault does not mean the grievance did not adequately present the claim that Defendant

10   threatened him.[2]   Because the Court concludes that Plaintiff has exhausted his administrative

11   remedies as to his retaliation claim, it recommends that Defendant's motion be dismiss this claim

12   be denied.

13                                            **IV.**

14                                   **RECOMMENDATIONS**

15        Based on the foregoing, it is HEREBY RECOMMENDED that:

16        1.    Defendants' motion to dismiss Plaintiff's failure to intervene claims against

17              Camargo and Hieng, without prejudice, for failure to exhaust the administrative

18              remedies be granted; and

19        2.    Defendants' motion to dismiss Plaintiff's retaliation claim against Gamboa,

20              without prejudice, for failure to exhaust the administrative remedies be denied.

21        These Findings and Recommendations will be submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-**

23   **one (21) days** after being served with these Findings and Recommendations, the parties may file

24   written objections with the Court.  The document should be captioned "Objections to Magistrate

25   Judge's Findings and Recommendations."  The parties are advised that failure to file objections

26

27   ---
     [2] To constitute adverse action, harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient, including the mere threat of harm. <u>Shepard v. Quillen</u>, 840 F.3d 686, 688-90, 691 (9th Cir. 2016) (quoting <u>Rhodes</u>,

28   408 F.3d at 569) (placement in administrative segregation or even threat do so on its own amounts to adverse action satisfying the first element).

                                             11

within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772

F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **September 26, 2023**

UNITED STATES MAGISTRATE JUDGE